UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Samantha LeHotan<br><br>*Plaintiff,*<br><br>v.<br><br>Driveline Retail Merchandising, Inc.<br><br>*Defendant.* | Case No. 1:24-CV-04674<br><br>Jury Trial Demanded |

**SAMANTHA LEHOTAN'S REPLY IN SUPPORT OF HER MOTION TO COMPEL**

This Court should grant Plaintiff's Motion to Compel (ECF No. 45) and require Driveline to produce documents/ESI from Michael Carter's personal cellphone because it is relevant and proportional. Fed. R. Civ. P. 26(b)(1). That cellphone contains information relevant to the following issues: 1) whether Carter raped LeHotan (ECF No. 55 ¶ 28); 2) how frequently Carter harassed LeHotan (*Id.* ¶ 16); 3) in which states Carter harassed LeHotan, including Illinois (*Id.* ¶ 33-39); 4) whether Carter had pornography on his phone (*Id.* ¶31); and 5) whether Carter sexually harassed other team members.

Based on texts in LeHotan's phone, Driveline team members used their personal phones for work purposes. Driveline000646.[1] Carter, the team's supervisor, appears to be the only team member issued a company phone, yet he also used his personal phone extensively for business. Driveline 000001-83; Driveline000646.

As set forth below, this Court should grant Plaintiff's Motion as to Carter's phone, because 1) it is relevant and proportional to needs of this case; 2) Driveline

---

[1] The cited documents, which have been produced in discovery, have been sent to the Court for *in camera* review.

1

controls it; and 3) Carter regularly used his personal phone for business. Driveline cannot push business communications onto employees' personal devices and then disavow their discovery.

### 1. RFPs 23, 24, and 26 are relevant to Plaintiff's Claims and/or Defendant's Defenses.

RFPS 23, 24, and 26 target evidence central to LeHotan's hostile-environment claim.[2] Together, they seek (1) records showing how Carter exercised authority over Plaintiff's assignments while also engaging in harassment, (2) communications reflecting whether Carter engaged in or condoned other sexually inappropriate conduct, (3) contemporaneous discussions with a key witness who observed Carter's behavior, and (4) offensive content located through a narrowly tailored keyword search. The requests are tied to the same overarching issues: whether Carter's harassment altered the terms and conditions of LeHotan's employment, whether Carter was functioning as her supervisor under federal and Illinois law, whether Driveline had notice of his conduct, and whether the things Lehotan alleges in her Complaint actually happened.

### a. RFP 23"All documents/ESI on Michael Carter's phone(s) relating to Plaintiff (e.g., texts, chats, call logs, voicemails, photos, videos, calendar entries)."

RFP 23 is relevant because it seeks Carter's work-related communications with others about Plaintiff. Those records go to the core question in a hostile environment case: whether Carter's harassment affected the terms and conditions of Plaintiff's employment. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 788. (to be actionable harassment must affect the terms and conditions of a plaintiff's employment). The traveling team worked in multiple states, at different stores, and

---

[2] Upon consideration, LeHotan withdraws her request to compel Driveline to produce communications with Terrence Arnold.

2

on varying schedules, and Carter used his personal phone as a regular tool to manage that work. Driveline 000051; 000079. "An employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim. *Vance v. Ball State University*, 570 U.S. 421, 421; *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 901 (7th Cir. 2018) ("Discrimination must be … so severe or pervasive so as to affect the terms and conditions of employment.") Thus, the ESI on Carter's phone will help confirm whether he was her supervisor under federal law, including whether he altered the terms and conditions of her employment. Furthermore, ESI related to Plaintiff may corroborate her sexual harassment allegations, including her allegations that Carter raped, exposed himself to her, violently pulled her hair, made lewd remarks toward her, berated her for refusing to engage socially, made inappropriate comments about her underwear, and displayed explicit photographs of himself engaging in sexual acts. ECF No. 55 ¶31.

### b. RFP 24 ""All documents/ESI on Michael Carter's phone(s) relating to sexual harassment."

RFP 24 is relevant because it seeks communications about sexual harassment more generally. Such records are relevant to whether others at Driveline had notice of Carter's conduct toward Plaintiff under the "knew or should have known" standard, and whether Driveline took adequate steps to prevent or correct sexual harassment. *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 931 (7th Cir. 2017) (employer may be liable for harassment that it knew or should have known about). Evidence that Carter sexually harassed other employees, which discovery of his cellphone may reveal, is also relevant here. In *Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 529 (7th Cir. 2008), the Seventh Circuit held that "me too" evidence may be relevant to discrimination and harassment claims. The court rejected a *per se* rule excluding such evidence and emphasized that its relevance depends on how

closely the other instances relate to the plaintiff's circumstances and theory of the case. *Id.*

Here, Defendant's Answer already denies, and Carter is expected to deny sexually harassing Plaintiff, while Plaintiff will testify that he did. Evidence that Carter engaged in similar misconduct with other employees would be directly relevant under *Foley* because it bears on the central credibility contest and on whether the harassment was severe and pervasive rather than an isolated incident. Plaintiff has alleged that Carter showed her pornography on his phone, made lewd and threatening remarks, threatened to spank her, and fondled his genitals in front of Plaintiff and other female employees (ECF 55 ¶31), and any communications showing a similar pattern of harassment toward other female employees will tend to bolster Plaintiff's credibility, are relevant to the hostile work environment allegations themselves. Evidence that Carter discussed harassment or shared offensive content with others is classic "me too" evidence, admissible to support credibility and to show that harassment was severe and pervasive rather than isolated. Even discriminatory conduct targeting others is relevant. In *Anaya v. Birck*, the court permitted searches of race-related terms in manager emails, even where those emails didn't reference the plaintiffs, because they reflected a racially hostile workplace. 2022 U.S. Dist. LEXIS 87066 at *20 (N.D. Ill. May 13, 2022). The Seventh Circuit has long endorsed this view: "Although they may be less important in defining her work environment than the assault she experienced firsthand, incidents directed at others and not the plaintiff ... do have some relevance in demonstrating the existence of a hostile work environment." *Smith v. Sheahan*, 189 F.3d 529, 534 (7th Cir. 1999).

Courts must also evaluate hostile work environment claims holistically, not by dissecting isolated events. See *EEOC v. Costco Wholesale Corp.*, 903 F.3d 618, 626 (7th Cir. 2018); *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1044–45 (7th

4

Cir. 2000); *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999); *Mangano v. Sheahan*, No. 00 C 3953, 2002 WL 1821738, at *8 (N.D. Ill. Aug. 7, 2002). The Supreme Court reaffirmed this in *Oncale v. Sundowner Offshore Servs., Inc.*, stating that workplace harassment must be assessed "considering all the circumstances." 523 U.S. 75, 81 (1998); *see also Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 912 (7th Cir. 2010). Title VII directs courts to assess whether a workplace is "permeated with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

For these reasons, RFP 24 seeks information squarely relevant to the claims and defenses in this case.

### c. The requested search terms are relevant.

RFP 26 seeks electronically stored information from Carter's phone that contains the Appendix A search strings. These search strings target ESI related to sexual harassment and are thus relevant for the same reasons that RFP 24 is relevant. The Appendix A terms are not exploratory; they are narrowly drawn to capture pornography, misogynistic language, and other sexually explicit content directly tied to Plaintiff's allegations. Plaintiff alleges that Carter showed her pornography on his phone, and Appendix A is designed to surface precisely that category of evidence. Rule 26(b)(1) fully supports this discovery. The ESI sought is directly relevant to Plaintiff's hostile environment claim because it bears on whether Carter's conduct altered the terms and conditions of her employment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Courts in this Circuit and elsewhere have emphasized that circumstantial evidence of harassment and discriminatory conduct must be discoverable so that plaintiffs are not deprived of probative proof.

Finally, Title VII requires courts to assess whether the workplace was "permeated with discriminatory intimidation, ridicule, and insult" and to evaluate

5

harassment "in the context of all the circumstances." *Oncale v. Sundowner Offshore Servs.*, Inc., 523 U.S. 75, 81 (1998); *Harris*, 510 U.S. at 21. Evidence showing Carter exchanged pornography harassing or misogynistic content with others is not marginal but part of that context. Appendix A is thus a proportional and targeted mechanism to uncover that evidence.

## 2. Michael Carter's privacy interests do not override LeHotan's right to obtain highly probative discovery.

Michael Carter's privacy interest in his personal phone does not automatically prevent the discovery LeHotan seeks. Rather courts consider privacy when deciding whether requested discovery is proportional to the needs of the case. In *Stuart v. Town of Framingham*, 2018 U.S. Dist. LEXIS 12728, at *8–9 (D. Mass. Jan. 26, 2018), the court acknowledged that individuals "have a general privacy interest in the content of their personal cell phone records." But the court also held that this interest must yield where the communications are with defendants or witnesses in the case, because "any privacy interest in the fact or timing of those communications is outweighed by Plaintiff's need for discovery." *Id.* The Court therefore allowed discovery of call records with the defendant and previously identified witnesses. *Id.*

Here Carter was not an uninvolved third party, he was the alleged harasser and Plaintiff's supervisor. His communications go to the heart of whether he harassed Plaintiff and whether that conduct altered the terms and conditions of her employment. Courts in similar contexts have been clear that privacy cannot serve as a blanket shield. For example, in *EEOC v. Simply Storage Mgmt.*, 270 F.R.D. 430, 434–36 (S.D. Ind. 2010), the court ordered production of electronic communications relevant to harassment and emotional distress claims, rejecting the argument that the claimants' expectation of privacy was a basis for withholding discovery. The court

6

emphasized that privacy concerns are managed through proportionality and protective orders, not by denying access to probative evidence. Privacy concerns do not categorically bar discovery of probative evidence. The complaint specifically alleges that Carter used his personal phone to harass Plaintiff, and Plaintiff's production confirms that Carter used this phone extensively and consistently for business purposes over a two-year period. The probative value of this evidence far outweighs any privacy burden. Courts have held that even sensitive personal materials are discoverable when they are relevant. *See Zakrzewska v. New School*, 2008 U.S. Dist. LEXIS 1725, 2008 WL 126594, at *2 (S.D.N.Y. 2008) (ordering production of diary, notwithstanding privacy concerns, because "it would be unfair . . . to permit a plaintiff claiming emotional distress to block discovery of facts" shedding light on the extent of emotional distress damages); *Rexford v. Olczak*, 176 F.R.D. 90, 93 (W.D.N.Y. 1997) (allowing discovery of diary containing contemporaneous accounts central to the issues). By the same reasoning, Carter's business use of his personal phone and its direct connection to the claims alleged make the requested discovery both relevant and proportional.

Here, the Court has already entered a confidentiality order that protects against misuse or public disclosure (ECF No. 35). Additional safeguards, such as redactions of purely personal material unrelated to the claims, can address any residual concerns. But Carter's privacy interest cannot outweigh Plaintiff's need for evidence that may corroborate her allegations. As the Seventh Circuit observed, "[a] plaintiff's ability to prove discrimination indirectly, circumstantially, must not be crippled by evidentiary rulings that keep out probative evidence because of crabbed notions of relevance or excessive mistrust of juries." *Riordan v. Kempiners*, 831 F.2d 690, 697–98 (7th Cir. 1987).

    **3. Carter's use of his phone for business purposes is sufficient to place it within Driveline's control.**

7

Cater's extensive use of his personal phone Federal courts are divided on when an employer has "possession, custody, or control" over an employee's personal device. *See Stinson v. City of New York*, 2016 U.S. Dist. LEXIS 868, 2016 WL 54684, at *5 (S.D.N.Y. Jan. 5, 2016) (noting division and collecting cases). Some courts have declined to compel production where there was no showing that the device was used for business at all or that such use was more than incidental. *See, e.g., Sriram v. Cambia Health Solutions, Inc.*, 2021 U.S. Dist. LEXIS 137876, 2021 WL 3129940, at *2 (W.D. Wash. July 23, 2021) (denying motion to compel where employer did not issue the phone and there was no evidence of routine business use); *Cotton v. Costco Wholesale Corp.*, 2013 U.S. Dist. LEXIS 103369, 2013 WL 3819974, at *6 (D. Kan. July 24, 2013) (same). *See Int'l Longshore & Warehouse Union v. ICTSI Oregon, Inc.*, 2018 U.S. Dist. LEXIS 204118, 2018 WL 6305665, at *7 (D. Or. Dec. 3, 2018) (noting absence of evidence of more-than-de-minimis work use). By contrast, when courts have found that employees made more than de minimis business use of their personal phones, they have been more willing to conclude that the employer had control over work-related communications stored there. *Capital Senior Living, Inc. v. Barnhiser*, 713 F. Supp. 3d 407, 415 (N.D. Ohio 2024) (finding company had control over documents in an employee's personal phone because she "routinely used her personal phone for work purposes" after working for the employer).

That framework points to a practical rule: if an employee's personal phone was regularly used for business purposes, then the employer has control over the business-related records on the phone. Here, Carter's phone easily meets that standard. Discovery to date has confirmed that Carter used his personal phone to: coordinate work assignments (Driveline000001); provide feedback on work (Driveline 000002); change employee job duties (Driveline000006-10); discuss communications with management employees (Driveline000012); discuss staffing on assignments

8

(Driveline000039); discuss work-related travel issues (Driveline000048); discuss employee timekeeping (Driveline000048); provide addresses for work assignments (000051); discuss tasks still needing to be completed (Driveline000053-54); receive reports of employee misconduct (Driveline000055); discuss employee pay raises (Driveline000061); share calendars with assignment dates (Driveline000067); discuss wage-and-hour issues (Driveline000070-71); discuss reimbursement for work-related travel mileage (Driveline000073-74); and coordinate navigation for work travel (Driveline000078).

Whatever threshold of business use is required for ESI on an employee's personal device to fall within an employer's control, Carter's use easily clears it. Documentary evidence currently in LeHotan's phone confirms that this work-related communication on Carter's personal device was a consistent part of his management style for at least two years. Driveline000001-87. Thus, the work-related ESI on his personal phone fall within Driveline's Rule 34 "control." Federal courts have long recognized that a principal has control over documents held by its agents. As the court explained in *Colborn v. Netflix, Inc.*, 608 F. Supp. 3d 736, 746 (E.D. Wis. 2022), "an attorney is an agent of a principal, and documents held by an agent/attorney are within the control of the client/principal" (citing *Avery Dennison Corp. v. UCB Films PLC*, No. 95-C-6351, 1998 WL 293002, at *2 (N.D. Ill. May 28, 1998)). The same agency principle governs here.

Given Carter's extensive use of his personal phone for business purposes, the overwhelming probative value of the evidenced sought, and the targeted nature of Plaintiffs requests, the discovery sought is proportional to the needs of this case. Each of the requests Plaintiff seeks to compel seeks targeted information about her sexual harassment allegation, while avoiding overbroad collection of irrelevant personal material. Courts have approved similar requests as a reasonable means to balance

privacy with the need for discovery in harassment litigation. See *Zakrzewska v. New School*, 2008 U.S. Dist. LEXIS 1725, 2008 WL 126594, at *2 (S.D.N.Y. 2008) (ordering production of diary because "it would be unfair . . . to permit a plaintiff claiming emotional distress to block discovery of facts" shedding light on the claim); *Rexford v. Olczak*, 176 F.R.D. 90, 93 (W.D.N.Y. 1997) (allowing discovery of diary containing contemporaneous accounts central to the issues).

## CONCLUSION

The discovery sought from Carter's personal phone is directly relevant. The complaint specifically alleges that Carter used this phone to harass Plaintiff. Plaintiff's production further shows that Carter used this phone extensively for business purposes over a two-year period. Given the overwhelming probative value of the evidence sought, the extensive business use of the phone, and the direct connection to the claims alleged, the relevance outweighs any burdens to Carter's privacy.

| | |
|---|---|
| Dated: August 29, 2025 | Respectfully Submitted: |
| | */s Francisco Fernandez del Castillo* |
| | Francisco Fernandez del Castillo<br>Del Castillo Law Group, LLC<br>11 E Adams Street #1401<br>Chicago, IL 60603<br>francisco@delcastillolawgroup.com<br>(312)-216 0111 |